**IN THE U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **LAURA HAMEL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No.** |
| **v.** | ) |
| | ) |
| **SCHOLARS INN, INC. d/b/a** | ) |
| **SCHOLARS KEEP f/k/a** | ) |
| **SCHOLARS INN GOURMET CAFÉ &** | ) |
| **WINE BAR,** | ) |
| | ) |
| **Defendant.** | ) |

**COMPLAINT FOR DAMAGES – WITH JURY DEMAND**

Plaintiff, by counsel, for her Complaint against Scholars Inn, Inc. ("Scholars"), states

as follows:

**JURISDICTION AND VENUE**

1.      This suit is brought under Title VII of the Civil Rights Act of 1964 (Title VII),

42 U.S.C. §2000 et. seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a et. seq.

This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

2.      All acts alleged herein were committed within the Southern District of

Indiana and venue is proper within this District and Division pursuant to 28 U.S.C.

§1391(b).

**PARTIES**

3.      Plaintiff Laura Hamel ("Hamel") is a citizen of the United States and the

State of Indiana, and at all relevant times has been a resident of Monroe County, Indiana.

1

4.      During the course of her employment at Scholars, Hamel was an "employee" of Scholars within the meaning of Title VII, 42 U.S.C. § 2000e(f).

5.      Defendant Scholars is a for-profit corporation, which conducts and operates business within the territorial jurisdiction of this Court from its facilities at 717 N. College Avenue, Bloomington, Indiana 47404.

6.      Scholars is an "employer" within the meaning of Title VII, 42 U.S.C. §2000e(b).

### HAMEL'S EMPLOYMENT WITH SCHOLARS

7.      Hamel worked for Scholars as a server for about a year from 2008 to 2009.  She quit because the General Manager kept touching her inappropriately, slapping her on the rear end constantly, and the Owner Kerry Feigenbaum refused to take any action after being informed of the harassment, to make the harassment stop.  Then again, in 2011 and 2012, after the harassing manager had left, Hamel returned and again served tables at Scholars. Hamel left Scholars again in 2012 and worked several other jobs until she returned to work as a server at Scholars in the Summer of 2016.

8.      In July 2016, Molly Otto ("Otto") moved to the Bloomington/Ellettsville area and begin working for Scholars as the General Manager.  At this time, Hamel and Otto began building a friendship. They socialized together and involved their young children in joint activities.  Hamel would also take care of Otto's children on occasion.

9.      In November 2016, Otto's husband, Matthew Plaisier ("Plaisier") was hired as the Executive Chef of Scholars Inn. Hamel, her husband, and Otto and Plaisier socialized together on occasion.  At all relevant times herein, Otto was the direct supervisor of Hamel at Scholars.

10.    In June 2017, Otto and Plaisier became business partners with then owners, Lyle and Kerry Feigenbaum ("Feigenbaums").

11.    During the Summer of 2017, Otto started indicating to Hamel that she desired Hamel sexually.  Otto began discussing her marital issues with Plaisier, as both husband and business partner.  Hamel became very uncomfortable hearing of Otto discuss inappropriate secrets regarding Otto and Plaisier's sex life.  At this time, Hamel began requesting boundaries with Otto, both verbally and via texting, and informed her that the sexual come-ons were a non-starter. All of the sexual innuendo and texting and comments occurred after working hours. Otto eventually confessed that she loved Hamel.  This statement and the sexual innuendo and comments from Otto made Hamel uncomfortable and she told Otto it made her feel that way.

12.    On or about June 24, 2017, Hamel received a late night extremely inappropriate "selfie" video from Otto which depicted Plaisier and Otto presumably naked in their bed with only the sheet covering them.  Otto and Plaisier both appear to be intoxicated/high when Otto announces "we're high" and "Matt just took a bong rip."  Otto and Plaisier begin telling Hamel how much they miss her and hope Hamel is enjoying her time with Hamel's mom.

13.    On or about July 9, 2017, Hamel texted Otto about getting some coffee together to which Otto replied "we're planning on crawling in bed but you can crawl in with us."  Hamel replied that she was going to go home.

14.    On August 5, 2017, Hamel made the realization that Otto's friendship and affection for her had grown to an uncomfortable state at work and inappropriate altogether and called an end to the friendship by penning a letter to Otto, to which Otto responded

that she appreciated the note and their friendship and looked forward to building the work relationship.

15. During the month of August 2017, Hamel focused on her work, would go straight home after work instead of staying and conversing with Otto.

16. Hamel was chosen quite often by Scholars management for heading up special events held at Scholars due to her performance and leadership. Otto had discussed creating an "events coordinator" position for Scholars Inn. This "events coordinator" position was to come to fruition in the Fall of 2017 when Hamel's children began school.

17. On or about August 31, 2017, Hamel overheard a conversation between Otto and another new, less experienced employee, Gretchen Lach ("Lach"). The conversation consisted of Otto discussing the "events coordinator" position which Otto had discussed placing Hamel in. Hamel attempted to discuss this move with Plaisier as she felt it was in retaliation for rejecting Otto's sexual advances. Plaisier stated he was too busy to discuss it and to discuss it with Otto.

18. On September 2, 2017, Hamel went to work early to specifically discuss the conversation she had overheard between Otto and Lach regarding the events coordinator position. At that time, Hamel explained to Otto that she was still extremely interested in the "events coordinator" position and that she was confused about why it was now being offered and discussed with Lach. Otto assured Hamel that it was only an idea they were tossing around and had not yet created the position.

19. On the morning of September 3, 2017, Hamel received an early morning text message from co-worker Nick Post advising her that he had double booked himself at two different jobs that morning. Hamel agreed to cover his shift at Scholars. Co-workers

at Scholars often covered shifts for each other, and it was not an uncommon practice.

20.     Upon Hamel's arrival at Scholars the morning of September 3, 2017, another server overslept.  Hamel handled set-up, hosting and seating during brunch and also helped a bridal party with set-up.  Hamel assisted off the clock and this was also not an uncommon practice.  Hamel had on more than one occasion volunteered her time off the clock to go in and deep clean, stain the deck, run errands, bus tables, run food, or host on short staffed nights.

21.     At approximately 1:00 p.m. on September 3, 2017, Assistant General Manager Hannah Richardson arrived to work and Hamel was relieved of her duties as a manager was now on duty.  It was at this time that another co-worker, Alison May, informed Hamel that Otto had in fact asked Lach to quit her other job in order to commit fully at Scholars with the intention of assuming the "events coordinator" position.  May encouraged Hamel to have a discussion with Lach so as to understand what both had been told with regards to the "events coordinator" position.

22.     On September 4, 2017, Hamel and Lach spent the day together with their children.  It was at this time that both Hamel and Lach realized that one of them was being lied to by Otto about the events coordinator position. Hamel came to the conclusion that she was now not being considered for the events coordinator position because she had refused Otto's sexual advances.

23.     Hamel reached out to Kerry Feigenbaum (co-owner) to report the sexual harassment and retaliation by Otto surrounding this events coordinator position. She called Feigenbaum on September 4, 2017 with witnesses to the phone call. Kerry Feigenbaum replied that her focus was on her new venture and she was training their

corporate team for the month of September and "Scholars business comes second." Kerry Feigenbaum stated she was sorry this was happening but didn't have time to look into the allegations for at least a month. Feigenbaum's refusal to address the sexual harassment and retaliation for refusing to return Otto's affections was exactly how Feigenbaum had reacted in 2009 when Scholar's General Manager was inappropriately touching Hamel.

24. On September 5, 2017, Hamel went to Scholars for her shift and began setting up the restaurant for service. Plaisier then summoned Hamel to a meeting. Hamel, Plaisier, Otto and Hannah Richardson sat at a table wherein they read to Hamel her Notice of Termination for "insubordination." Otto stated to Hamel that "you called Kerry and reported me for sexual harassment."

25. On September 9, 2017, Hamel again contacted Kerry Feigenbaum regarding her termination and was told simply to "get a lawyer."

**ADMINISTRATIVE PROCEDURES**

26. In November 2017, Hamel filed a charge of discrimination with the E.E.O.C. alleging sex discrimination and retaliation, with the Equal Employment Opportunity Commission ("EEOC") under charge number 470-2018-00168. A true and accurate copy of this charge is attached hereto as Exhibit A.

27. The EEOC had jurisdiction over Hamel's charge, conducted investigation and on January 31, 2018, it issued Hamel a Notice of Right to Sue which was received on or about February 5, 2018. A true and accurate copy of this Notice of Right to Sue is attached hereto as Exhibit B.

28. Hamel has ninety (90) days from the receipt of the Notice of Right to Sue to file a Complaint based on the conduct described in the charge, which time has not passed.

## COUNT I – SEX DISCRIMINATION AND HARASSMENT

29.     Plaintiff incorporates by this reference, as if fully set forth herein, all previous paragraphs of this Complaint.

30.     Scholars engaged in unlawful sex discrimination and harassment in violation of Title VII when it subjected Plaintiff to differential treatment, including unwanted sexual advances.

## COUNT II - RETALIATION

31.     Plaintiff incorporates by this reference, as if fully set forth herein, all previous paragraphs of this Complaint.

32.     Defendant Scholars engaged in unlawful retaliation against Plaintiff in violation of Title VII when it offered "events coordinator" position to another individual when Hamel refused to return Otto's affections and expressed being very uncomfortable with her sexual advances.

33.     Defendant engaged in unlawful retaliation against Plaintiff in violation of Title VII when it terminated Plaintiff because she complained of sexual harassment and retaliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the judgment of this Court against Defendant, Scholars Inn, Inc., providing the following relief:

A.     A permanent injunction enjoining Scholars Inn, Inc,, its officers, agents, servants, employees, attorneys, and all persons in active concert or participating with it, from discriminating against and harassing employees because of their sex in violation of Title VII and from retaliation against individuals who complain about unlawful discrimination.

B.      An order directing Scholars Inn, Inc., to institute and carry out policies, practices, and programs, including training programs and the establishment of an independent oversight committee, which assure equal employment opportunities for female employees and which eradicate the effects of its past and present unlawful employment practices.

C.      An order directing Scholars Inn, Inc., to make Plaintiff whole, by providing appropriate backpay and lost employment benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay or reinstatement of Plaintiff.

D.      An order directing Scholars Inn, Inc., to make Plaintiff whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, mental anguish, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

E.      An order directing Scholars Inn, Inc., to pay Plaintiff punitive damages for its malicious and reckless conduct, in an amount to be determined at trial.

F.      Plaintiff's attorneys' fees and the costs of this action.

G.      Such further relief as the Court deems necessary and proper in the public interest.

Respectfully submitted,

**ALLMAN LAW LLC**

/s/Joseph E. Allman
Joseph E. Allman, #17214-28
Attorney for Plaintiff

## JURY DEMAND

Now comes the Plaintiff, by counsel, and demand that this cause be tried to a jury on all issues so triable.

Respectfully submitted,

**ALLMAN LAW LLC**

/s/Joseph E. Allman
Joseph E. Allman, #17214-28
Attorney for Plaintiff Laura Hamel

ALLMAN LAW LLC
211 N. Pennsylvania Street
Suite 1600
Indianapolis, IN  46204
Telephone: (317)608-1136
Facsimile: (317)833-3031